No. 30,301.

MILBURN L. HOLT, Widow of Julius E. Holt, Deceased, *Appellee,*
v. THE PETERSON CONSTRUCTION COMPANY et al., *Appellants.*

(4 P. 2d 428.)

Opinion filed November 7, 1931.

*Charles L. Kagey, Leon W. Lundblade, L. M. Kagey,* all of Beloit, and *Edgar Fenton,* of Kansas City, Mo., for the appellants.

*William E. Carson,* of Kansas City, and *R. L. Hamilton,* of Beloit, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is a workmen's compensation case. Julius E. Holt was an employee of the Peterson Construction Company, and had been for about eight years. The company was engaged in building a hospital at Beloit and had arranged with the United States Fidelity and Guaranty Company to be its insurance carrier. Holt had worked for the construction company as carpenter, foreman and finally as superintendent. On July 3, 1929, while carrying a door through a set of revolving doors at the hospital under construction, Holt came in contact with a splinter of the door he was carrying, which it is alleged punctured the inside of his nose near where the mucous membrane connects with the skin of his lip. It is alleged to have resulted in blood poison, and after the puncture the infection increased rapidly. He visited Doctor Cook, who had been employed by the insurance carrier to represent it and treat employees injured while at work on the hospital. Holt died

on July 16, 1929, thirteen days after he suffered the injury. Compensation for the injury and death was claimed by the employee's widow, Milburn L. Holt, and upon the testimony produced the commission found that the injury was sustained by accident arising out of and in the course of the employment of Holt, and that his death resulted from the accidental injury. There was a finding that Milburn L. Holt was totally dependent upon the deceased workman and was entitled to the maximum compensation of $4,000, together with $150 for funeral benefits, and $166 for medical expenses. It was decided that $1,404 of the compensation was then due and that the balance should be paid in installments of $18 per week.

It is not questioned that the defendants were operating within the compensation law, and their attorney announced at the hearing that the issue to be tried was, "Did that man [Julius E. Holt] sustain an accident, and did his death result from the alleged accident? That is all there is to it." The commission made an elaborate report of the evidence on which its findings were based and the district court to which an appeal was taken affirmed the findings of the commission. From the decision of the district court defendants have appealed, and are here insisting that improper evidence was admitted by the commission and that the findings are not sustained by competent legal evidence.

For instance, defendants assign as errors the admission by the commission of testimony of a conversation between Holt and the defendant, Peterson, after the injury, in which Holt told Peterson how he was injured and what was said by Peterson at that time. It is claimed that it was hearsay and incompetent. Objections were also made for a like reason to what was said when Peterson was investigating the accident and was told by an employee on the job that he remembered the accident and saw the place on Holt's nose where he was injured, and that there was blood on his lip where the splinter entered.

Objections were made, too, as to statements of Doctor Cook, who treated the injury and was told the history of the case by Holt, as to the symptoms and also how the accident happened, namely, by a splinter of a door puncturing his nose. Later other doctors were called in consultation on the case, and this history was given to them upon which they expressed opinions.

Objections were also made to form of hypothetical questions pre-

sented to the doctors. Then there was objection that statements made by Holt to the doctors and others were made while he was delirious, but as to his delirium there is conflicting testimony.

The defendants are proceeding on the theory that the procedure and the taking of testimony in a compensation case is subject to all the technical rules, objections and exceptions applicable in a judicial tribunal trying an action for damages or other ordinary common-law actions. Claims for compensation are to be adjusted and determined somewhat informally by the compensation commission according to the procedure provided in the compensation act. The questions presented for settlement of such claims are not controlled by the code of civil procedure, but rather by the code prescribed in the compensation law. The commission is an administrative agency with some powers that are quasi judicial, but as has been decided—

"The provisions for compensation to be obtainable in a quick, easy and inexpensive way are a radical departure from the recovery of damages for injuries to workmen in ordinary common-law actions. The manifest purpose was to provide a simple and summary remedy complete within itself for industrial accidents, making the loss a charge upon the business or industry." (*Norman v. Consolidated Cement Co.*, 127 Kan. 643, 648, 274 Pac. 233.)

The compensation commissioner before whom the testimony is taken is not required to be a lawyer and may not be versed in the technical rules of evidence that may be invoked and applied in courts trying common-law cases. Testimony that is relevant, reasonable, persuasive and which induces belief, may be the basis of the findings of the commission, and if its action and decision are free from fraud, unfairness or misconduct, and are based upon substantial and satisfactory evidence, they will be upheld. (*Coe v. Koontz*, 129 Kan. 581, 283 Pac. 487. See, also, R. S. 1930 Supp. 44-523.)

Much liberality is allowed in the taking of testimony in boards, commissions, committees and other organizations acting for the public, such as public service commission, county commissioners and boards of equalization. (*Lynch v. Chase*, 55 Kan. 367, 40 Pac. 666; *Meffert v. Medical Board*, 66 Kan. 710, 72 Pac. 247, and cases there cited.) In the Meffert case, in a proceeding before the board of health, it was contended that evidence had been received which was hearsay and otherwise in violation of the ordinary rules of evidence. It was said:

"The provisions of the act creating the board plainly indicate that such investigation was not intended to be carried on in observance of the technical

rules adopted by courts of law. The act provides that the board shall be composed of seven physicians. These men are not learned in the science of law, and to require of a board thus composed that its investigations be conducted in conformity to the technical rules of a common-law court would at once disqualify it from making any investigation. It is subversive of the morals of the people and degrading to the medical profession for the state to clothe a grossly immoral man with authority to enter the homes of her citizens in the capacity of a physician. It was the intention of the legislature to adopt a summary proceeding by which the morals of the people and the dignity of the profession might be protected against such a possibility without being embarrassed by the technical rules of proceedings at law." (p. 715.)

In *Orendoc v. Kaw Steel Construction Co.*, 131 Kan. 366, 291 Pac. 952, the procedure in compensation cases before the commissioner and also on the limited appeals to the district and supreme courts, is stated, and it and other cases cited show that the methods to be pursued are those provided in the compensation act itself and not those prescribed in the civil code for court trials. An instance of the difference in the rules of evidence in a hearing before the compensation commission and of one before a court in an ordinary action, is *McDonnell v. Swift & Co.*, 124 Kan. 327, 259 Pac. 695, where it was contended that evidence of a dying declaration as well as that of the widow of the deceased, were not admissible in evidence, and it was held that the rules invoked were not applicable in a compensation case.

We conclude that the objections urged are not grounds for reversal, and further that sufficient evidence was produced to warrant the finding of the commission and the approving decision of the district court. That decision is affirmed.