No. 30,481.

THELMA FREEMAN, and THELMA FREEMAN as Guardian of the Estate of WILLIAM WYATT, JR., *Appellees;* TAMER FREEMAN, MONROE FREEMAN and IRENA FREEMAN, *Appellants,* v. THE FOWLER PACKING COMPANY, *Appellant.*

(11 P. 2d 276.)

Opinion filed May 7, 1932.

*Edwin S. McAnany, Maurice L. Alden, Thomas M. Van Cleave, A. J. Herrod,* all of Kansas City, and *G. R. Herr,* of Chicago, Ill., for the appellant.

*J. H. Brady* and *N. E. Snyder,* of Kansas City, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The proceeding was one for compensation for death of a workman. Compensation was allowed. The employer appeals.

Two women claimed compensation as the workman's widow, and the parents of the deceased workman claimed as dependents. The commissioner of compensation said that much of the testimony was false, and was given for the purpose of supporting claims to compensation, and stated the following findings:

"It is found that Thelma Freeman, widow, and Thelma Freeman, guardian of William Wyatt, Jr., is entitled to compensation for the death of Benson Freeman. It is further found that Tamer and Monroe Freeman were not dependent upon Benson Freeman at the time of his death.

"It is further found that Irena Freeman was not the legal widow of Benson Freeman at the time of his death.

"It is found that Benson Freeman died as the result of a personal injury by accident arising out of and in the course of his employment."

An award of compensation was made accordingly. An appeal was taken to the district court, which confirmed the commissioner's award.

Irena Freeman, who claimed she was the common-law wife of the workman, did not appeal from the judgment of the district court. The parents appealed. So far as this court knows, the testimony in their behalf was disregarded by the commissioner and by the district court. The employer appealed from the award to Thelma Freeman, and makes two contentions: First, Thelma Freeman was not the legal widow of the workman; and second, there was no competent evidence that death of the workman was the result of accident.

Thelma Wyatt was divorced from her husband on March 22, 1929. Two weeks later, on April 5, she married Benson Freeman, the workman. The statute reads:

"It shall be unlawful for either party to such divorce suit to marry any other person within six months from the date of the decree of divorcement; . . . and every person marrying contrary to the provisions of this section shall be deemed guilty of bigamy, and such marriage be absolutely void." (R. S. 60-1512.)

The result is, the formal marriage of Thelma and Benson Freeman was void. They continued, however, to live together as husband and wife after expiration of the six months' period, and were so living together at the time of his death, which occurred on September 13, 1930. This being true, after the time elapsed within which Thelma

was forbidden to marry, she was Benson's common-law wife (*Renfrow v. Renfrow*, 60 Kan. 277, 56 Pac. 534), and at his death she became his widow.

Previous to 1927, the definition section of the workmen's compensation act read as follows:

"In this act, unless the context otherwise requires: . . . (*j*) 'Dependents' means such members of the workman's family as were wholly or in part dependent upon the workman at the time of the accident. 'Members of a family,' for the purpose of this act, means only widow or husband, as the case may be, . . ." (R. S. 44-508.)

In 1927 the statute was amended by inserting the word "legal" before the word "widow." (R. S. 1931 Supp. 44-508 [*j*].) The word "legal" has a variety of meanings: conforming to law; according to law; required or permitted by law; not forbidden or discountenanced by law. (Black's Law Dictionary.) The word also means "good and effectual in law," and in that sense Thelma was Benson's legal widow.

In many instances it would be insufferably unjust to deny compensation to the survivor of a common-law marriage. If the legislature intended to do that, it would have been easy to express the intention in unambiguous terms. Under these circumstances, the court conceives the purpose of the amendment to have been to deny compensation to any survivor who cannot show a marriage which the law recognizes, and to deny compensation to the survivor of a marriage contracted according to formal legal requirements, but in fact of no legal effect. A marriage declared by statute to be incestuous, as between first cousins, is an example. Another example is the marriage of Thelma and Benson during the period within which the law did not recognize it as valid for any purpose. This interpretation gives to the word "legal" a meaning not merely technically correct, but correct according to approved usage in lay speech (R. S. 77-201, *Second*), allows scope for operation of the statute, and avoids undue severity of result in application.

The commissioner as an administrative officer heard testimony concerning the subject of death resulting from accidental injury, not admissible under the rules of evidence applicable to procedure in court. He was permitted to do this by statute (R. S. 1931 Supp. 44-523). In reviewing the commissioner's work, the courts may not nullify it by applying their own standards; and if the commissioner's decision be based on substantial and satisfactory evidence, relevant,

reasonable, and persuasive, though not technically admissible under the rules of evidence governing procedure, the decision will be upheld. (*Holt v. Peterson Construction Co.*, 134 Kan. 149, 151, syl. ¶ 2.) In this instance it is not necessary to discuss the evidence in detail. There was competent and relevant testimony sufficient to sustain a finding by a jury in the trial of an action, that the workman's death was the result of accident occurring in the course of his employment.

The judgment of the district court is affirmed.