No. 42,837

Rose Pence, Widow, and Guardian of Constance Joyce Pence, Minor Child (Walter M. Pence, Deceased), (Claimants), *Appellees,* v. Centex Construction Company, Inc. (Respondent), and United States Fidelity and Guaranty Company (Insurance Carrier), *Appellants.*

(371 P. 2d 100)

Opinion filed May 5, 1962.

*David H. Fisher,* of Topeka, argued the cause, and *Irwin Snattinger, Donald Patterson, C. K. Sayler,* and *Jack L. Summers,* all of Topeka, were with him on the briefs for the appellants.

*George E. McCullough,* of Topeka, argued the cause, and *W. L. Parker, Jr., Robert B. Wareheim,* and *Philip J. Saia,* all of Topeka, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Parker, C. J.: This is a workmen's compensation case where the claimants recovered in the proceeding before the Compensation Director and in the district court. The respondent, employer, and the insurance carrier appeal.

The proceeding was instituted by Rose Pence as the widow of her deceased husband and as guardian of his sole dependent minor child, hereinafter referred to as claimants or appellees, against Centex Construction Company, Inc., the employer, and its insurance carrier, United States Fidelity & Guaranty Company, hereinafter referred to as respondents or appellants.

Before submitting the cause to the Compensation Commissioner, now Compensation Director (see Laws 1961, Chapter 243, Section 7, now G. S. 1961 Supp., 74-710), hearings were conducted by an Examiner, at the direction of the then Commissioner, where the parties entered into the following stipulation:

"The date of death of the deceased was April 22, 1960; that the relationship of employee-employer existed between the deceased and Respondent on October 21, 1959; that the parties were covered by the Kansas Workmen's Compensation Act; that Rose Pence is the legal guardian of Constance Joyce Pence, minor; that written claim was made within one (1) year; and that the deceased's average weekly wage was $126.00. It was further agreed that no compensation had been paid and no medical or hospital was furnished and the funeral expenses were incurred . . .

"The questions remaining in issue were: (1) Whether deceased met with personal injury by accident on October 21, 1959; (2) Whether the alleged accident arose out of and in the course of employment with the Respondent; (3) Whether the deceased's death on April 22, 1960 was caused by the alleged accident of October 21, 1959; (4) Amount of compensation due, if any; (5) Medical and hospital expenses due, if any."

At the time of the abolishment of the position of Commissioner under Section 7, Chapter 243, Laws 1961, which became effective June 30, 1961, no hearing had been held and no award had been rendered by the Commissioner in the involved proceeding. In that situation his successor, having been appointed as Workmen's Compensation Director in conformity with the provisions of such statute, reviewed the record theretofore presented to the former Commissioner for his decision.

Thereafter, and on August 8, 1961, the Director made findings and rendered an award in accord with such findings in favor of the claimants and against the respondents, whereupon respondents appealed to the district court.

The findings on which the Director based his award read:

"The Director finds, in addition to the admissions and stipulations of the parties: That the deceased suffered personal injury by accident on October 21, 1959, in Shawnee County, Kansas; that this accident arose out of and in the course of the employment of the deceased with the respondent; that the death of the workman resulted from his accidental injury; that the claimant was temporarily totally disabled from October 21, 1959, to April 22, 1960, the date of his death; that compensation for 25.14 weeks should be awarded at $38.00 per week, totalling $955.32, which should be paid to his widow as his personal representative; that medical and hospital expense for the care and treatment of the claimant was incurred and paid by Rose Pence as follows: Stormont-Vail Hospital, $841.50 and Dr. John Crary, $217.00; that award should be entered requiring the respondent and insurance carrier to reimburse claimant for this medical treatment and $600.00 for burial expenses paid by her; that the claimants were totally dependent upon the deceased at the time of his death; that award should be entered allowing the claimants compensation in the amount of $12,544.68 to be paid one-half to claimant, Rose Pence, and one-half to Constance Joyce Pence, a minor, payable to Rose Pence, as her guardian."

After hearing the appeal, in conformity with the provisions of G. S. 1961 Supp., 44-556, the district court found that the findings and award of the Workmen's Compensation Director were fully supported by the evidence in the case and adopted verbatim the findings and award of such Director as its findings and award. Thereupon it rendered judgment accordingly. Respondents then perfected the instant appeal.

Because they affect other contentions advanced by the parties we feel it necessary to dispose, at the outset, of four contentions to which we shall now refer.

Appellees challenge the right of appellants to be heard on the premise their specifications of error claim error of fact only. We do not agree. Without laboring the point it may be stated we believe appellees' construction of such specifications is too technical and that, in our opinion, they should be construed as charging the particular matters therein complained of were not supported by any substantial competent evidence.

Appellants contend that in a workmen's compensation proceeding the burden is upon the claimants to show that the injury for which compensation is claimed was one arising out of and in the course of the employment. It may be conceded, as appellees frankly admit, that such is the rule. See, e. g., *Neal v. Boeing Airplane Co.*, 161 Kan. 322, 167 P. 2d 643, also *Abbott v. Southwest Grain Co.*, 162 Kan. 315, 176 P. 2d 839, and other decisions cited at page 320 of the opinion in that case. Be that as it may it must be remembered, that in actions brought under the provisions of our compensation statute, that burden is satisfied if, during the trial of such a proceeding, the claimant introduces any substantial competent evidence which, if believed, tends to support the findings and award of the trier of fact even though there may be other competent evidence to the contrary which, if it had been given credence by the trier of fact, would have warranted findings and an award to the contrary. This principle, it may be added, is so well-established that it requires no citation of authorities supporting it.

Appellants further contend the award of the Director in this case does not comply with the provisions of G. S. 1949, 44-523, which require the Commissioner, now the Director, to file his award within thirty days. Under the facts of this case there are several reasons why appellants' position on this point cannot be upheld. In the first place the record does not disclose that the cause had ever been sub-

mitted to the then Commissioner for final hearing. In the next, under somewhat similar conditions and circumstances, this court in *Davis v. Haren & Laughlin Construction Co.*, 184 Kan. 820, 339 P. 2d 41, said:

". . . Since the examiner's ruling was not in writing in effect there was no award from which an appeal could be taken and claimant's purported appeal of February 14, 1958, was of no effect. It was therefore within the competence of the commissioner to make an award upon the record adduced before the examiner. While G. S. 1949, 44-523 provides that an award shall be made within thirty days from the time the matter is submitted, this court held in *Ketchell v. Wilson & Co.*, 138 Kan. 97, 99, 23 P. 2d 488, that although the statute is designed to secure prompt action, it does not impose a time limitation upon the commissioner's jurisdiction to make an award." (p. 822.)

And last, but not least, when the cause was finally submitted to the successor Director the findings and award of that official were filed on the very day the hearing was concluded, *i. e.*, on August 8, 1961.

What has just been stated fully disposes of the foregoing question. However, in passing, we note a side contention the Director had no authority to make the decision and enter the award because of the provisions of G. S. 1961 Supp., 44-551. We find nothing in this section of the statute which precludes the Director from making an award in a compensation case, as authorized by other sections of our Compensation Act, and hold to the view that the provisions of such section have no application under the facts and circumstances here involved.

We have held many times that whether a judgment is supported by substantial competent evidence is a question of law, as distinguished from a question of fact. (See *Beaver v. Tammany Industries*, 180 Kan. 440, 443, 304 P. 2d 501; *Holler v. Dickey Clay Mfg. Co.*, 157 Kan. 355, Syl. ¶ 5, 139 P. 2d 846; *Hill v. Etchen Motor Co.*, 143 Kan. 655, 56 P. 2d 103.)

In their brief and on oral argument appellants raise three questions. For purposes of this appeal such questions can be consolidated, considered together, and treated as a single question which may be stated thus.

Does the record disclose any substantial competent evidence to support the Director's and the district court's findings that the deceased workman suffered personal injury by accident on October 21, 1959; that this accident arose out of and in the course of his employment with the respondents; and that his death resulted from his accidental injury?

In any approach to the foregoing question it should be stated that the rule in this jurisdiction, so often repeated as to hardly require reference to our decisions, is that it is the function of a trial court to pass upon the facts in a workmen's compensation case and that under G. S. 1961 Supp., 44-556, this court is limited on appellate review to "questions of law" which in final analysis, simply means that its duty is to determine whether the trial court's factual findings are supported by any substantial evidence. See, e. g., *McDonald v. Rader,* 177 Kan. 249, 251, 277 P. 2d 652; *Kafka v. Edwards,* 182 Kan. 568, 571, 322 P. 2d 785, and the numerous decisions there cited, also *Cross v. Wichita Compressed Steel Co.,* 187 Kan. 344, 356 P. 2d 804.

Moreover, in the face of the record presented, it should be stated, that despite some specious argument of appellants to the contrary, we are convinced the duties and obligations of this court in determining the question now under consideration are those described and set forth in *Silvers v. Wakefield,* 176 Kan. 259, 270 P. 2d 259 (repeated in *Allen v. Goodyear Tire & Rubber Co.,* 184 Kan. 184, 185, 186, 334 P. 2d 370, and *Cross v. Wichita Compressed Steel Co.,* p. 346, *supra*), where it is said:

"Under G. S. 1949, 44-556, appellate jurisdiction of this court in compensation cases is confined to reviewing questions of law only. In doing so, it is necessary to determine whether the record contains any evidence which tends to support the judgment rendered, and in so considering, this court is required to view all testimony in the light most favorable to the prevailing party below. If when so considered, the record contains any evidence which supports the trial court's judgment, that judgment must be affirmed; being conscious at all times of the fact that this court has little concern with disputed questions of fact in ordinary lawsuits and none whatever in workmen's compensation cases, except to ascertain whether the record contains any evidence which on any theory of credence would justify the trial court's finding or conclusion of fact. (Citing cases.)" (pp. 259, 260.)

Much of appellants' argument is based on claims, strenuously urged, that the evidence of record in this case is based entirely on hearsay and other incompetent evidence of no probative value, without any substantiating evidence which would be admissible in a court of law.

It is neither necessary nor required that we here write a thesis on the subjects of the admissibility of hearsay evidence and the probative force and effect to which it is entitled when admitted in workmen's compensation cases. However, brief reference will be

made to some of our decisions dealing with these and kindred subjects.

In *Freeman v. Fowler Packing Co.*, 135 Kan. 378, 11 P. 2d 276, a case where the workman died from his injuries, we said:

"The commissioner as an administrative officer heard testimony concerning the subject of death resulting from accidental injury, not admissible under the rules of evidence applicable to procedure in court. He was permitted to do this by statute (R. S. 1931 Supp. 44-523 [now G. S. 1949, 44-523]). In reviewing the commissioner's work, the courts may not nullify it by applying their own standards; and if the commissioner's decision be based on substantial and satisfactory evidence, relevant, reasonable, and persuasive, though not technically admissible under the rules of evidence governing procedure, the decision will be upheld. (*Holt v. Peterson Construction Co.*, 134 Kan. 149, 151, Syl. ¶ 2.) . . ." (pp. 380, 381.)

In *Parker v. Farmers Union Mut. Ins. Co.*, 146 Kan. 832, 73 P. 2d 1032, another death case—where the *Freeman* case was quoted with approval, the admission of hearsay evidence was approved and an award in favor of the claimant affirmed.

In another death case, *Love v. Kerwin*, 187 Kan. 760, 359 P. 2d 881, in dealing with the subject of hearsay evidence, this court held it had been cited to no cases where hearsay had been stricken from the record and, citing decisions, said "Many of our cases have held that the common-law rules as to the competency of evidence are not to be strictly applied in workmen's compensation cases."

We have dealt with the admission and probative value of hearsay evidence in many workmen's compensation cases, particularly in view of the liberal provisions of Section 23 of our Compensation Act, as originally enacted in 1927 [now G. S. 1949, 44-523], where injured workmen did not die from their injuries. For one of such cases see *Son v. Eagle-Picher M. & S. Co.*, 144 Kan. 146, 58 P. 2d 44, where it is said:

"Another question is raised by appellant as to the effect of the omission of the two words 'or evidence' from the amendment of the section of the compensation law in 1927, being R. S. 1933 Supp. 44-523 [now G. S. 1949, 44-523], where the legislature specifically directed that in investigations for compensation the technical rules of procedure would not be binding. This matter, as we understand it, has been passed upon twice to the effect that procedure under this amendment includes evidence. (*Freeman v. Fowler Packing Co.*, 135 Kan. 378, 11 P. 2d 276; and *Walz v. Missouri Pac. Rld. Co.*, 142 Kan. 164, [166], 45 P. 2d 861.)" (p. 152.)

See, also, *Holt v. Peterson Construction Co.*, 134 Kan. 149, 4 P. 2d 428, which holds:

"A finding and award of the compensation commission free from fraud or unfairness, based on relevant and persuasive evidence, will be upheld although some of it was not in accord with the technical rules of evidence applicable in common-law actions in trials before a judicial tribunal." (Syl. ¶ 2.)

And see *Dean v. Hodges Bros.,* 170 Kan. 333, 224 P. 2d 1028, where, after quoting from what is now G. S. 1949, 44-523, we said:

"In construing the force and effect of the section of the statute just quoted we have held many times the rules of the civil code are not applicable in compensation proceedings and that the commissioner should not confine the parties to strict rules of evidence." (p. 335.)

And then quoted with approval what is said and held at pages 380 and 381 of *Freeman v. Fowler Packing Co.,* supra.

For a general statement dealing with matters referred to in the foregoing decision see *Wilson v. Santa Fe Trail Transportation Co.,* 185 Kan. 725, 347 P. 2d 235, where it is said:

"Consideration of these claims is interwoven with the first two questions presented by the respondent.

"By express mandate the commissioner in a workmen's compensation proceeding is not bound by technical rules of procedure (G. S. 1949, 44-523), and the commissioner is directed to *hear and determine the matters presented,* and to make findings or an award such as he shall determine *fair and equitable under the provisions of the act* (G. S. 1949, 44-522). The workmen's compensation act establishes a procedure of its own which provides a remedy that is substantial, complete and exclusive in compensation cases. (*Employers' Liability Assurance Corp. v. Matlock,* 151 Kan. 293, 98 P. 2d 456; and cases cited therein.)" (p. 738.)

Objections are made that the testimony of Dr. Crary, who was the deceased's attending physician and was told the history of the case by such workman as to symptoms and also how the accident happened, was hearsay and therefore inadmissible as evidence. This contention is squarely answered in *Holt v. Peterson Construction Co.,* 150, 151, *supra,* where a similar contention, founded on like conditions and circumstances, was rejected by this court. The books are full of cases where the testimony of medical experts, based on the history of a case as gleaned from statements made by their patients, has been properly received in evidence and given probative force and effect.

Further objections to the effect Mrs. Pence was an incompetent witness to testify to conversations had by her with her husband require little attention. This court, for reasons stated in *McDonnell v. Swift & Co.,* 124 Kan. 327, 259 Pac. 695, has held that, in an action for compensation under the Workmen's Compensation Act by the

widow as a dependent of a deceased workman, the widow is not, by virtue of R. S. 60-2804 (now G. S. 1949, 60-2804) or R. S. 60-2805 (now G. S. 1949, 60-2805, *Third*), incompetent to testify to communications made to her by her husband.

In leaving evidentiary questions it should be kept in mind that under all our decisions (see, e. g., *Thuillez v. Yellow Transit Freight Lines*, 187 Kan. 618, 358 P. 2d 676; *Silvers v. Wakefield*, Syl. ¶ 2, *supra; Carney v. Hellar*, 155 Kan. 674, 127 P. 2d 496; *Williams v. Cities Service Gas Co.*, 151 Kan. 497, 99 P. 2d 822; *Supica v. Armour & Co.*, 131 Kan. 756, 293 Pac. 483), the rule in workmen's compensation cases is that the claimant is not required to establish his right to an award by direct evidence alone, or that he produce an eyewitness to the accident; and that *circumstantial evidence* may be used to establish the claim and it is not necessary that such evidence should rise to that degree of certainty as to exclude every reasonable conclusion other than that found by the trial court.

It goes without saying that appellants' position on the all decisive question previously posed is that the record discloses no substantial competent evidence on which the Director or the district court based the findings and award in favor of the appellees.

Nothing would be gained by prolonging this opinion with a detailed statement of the evidence disclosed by a lengthy record. It suffices to say we have carefully and painstakingly read, considered and reviewed all evidence adduced by the parties in the light of the foregoing decisions and, after doing so, find that, among other things, such record discloses:

(1) Substantial competent evidence to the effect that on Wednesday, October 21, 1959, while working for the respondent, employer, on a very hard job—as hard as he was required to work—and while stooping over and exerting himself driving nails, the deceased workman commenced to have severe pains in his chest and thereafter became sick and advised his boss accordingly; that the deceased appeared in good health on the morning of the 21st when he left home for work and from his general appearance appeared to be a sick man when he came home from work that evening; that the deceased never went back to work; that on the following Sunday (October 25, 1959) the deceased's condition had not improved; that on that day (October 25) Dr. Crary was contacted and placed deceased in the hospital where he remained for fourteen days; that he returned to the hospital for the second time in December, 1959;

that he re-entered the hospital for a third time in March, 1960; and that he was subsequently returned to the hospital on April 16, 1960, where he remained until the date of his death (April 22, 1960) which, according to his doctor was due to heart failure as the result of coronary sclerotic changes.

(2) Substantial competent evidence by the deceased's attending physician, Dr. Crary, who testified the deceased had apparently had a type of angina pectoris pain and at the time of his examination of such disease in October, 1959, his diagnosis was coronary thrombosis with coronary occlusion and myocardial infarction.

Further testimony of this witness can be demonstrated by quoting certain questions put to him and answers made thereto.

"Q. You are supposed to answer all the questions and then the Commissioner rules on them. A. The process of the coronary occlusion due to a thrombosis is felt, as far as my opinion is concerned, that it probably, that it must have begun on October 21st.

"Q. In other words, this thing, the onset of this thing occurred in July of '59? A. For the record I think it should be stated that there is a difference. My feeling that he was having what we call angina pectoris was in July.

"Q. And the next step then, is the thrombosis which is the forming of a blood clot or a closing of the coronary arteries or the blood vessels, and when it is completely closed it causes a coronary occlusion? A. Correct.

"Q. And the coronary occlusion causes the myocardial infarction at the time? A. Correct.

"Q. And the myocardial infarction caused the death, in your opinion? A. Yes.

"Q. All right. This is all a gradual process, is it not, Doctor? A. Not exactly. Now when a coronary thrombosis occurs this happens very quickly, possibly within hours or even a few days.

"Q. That [referring to a prior answer of the witness relating to the relationship of effort to the onset of coronary thrombosis and the onset or beginning of the first symptoms thereof evidenced by the deceased] was in July of '59? A. That was on October 21st.

"Q. Well, Doctor, I thought you said that the man had a pain originally in July of '59? A. This is different. This man, as my clinical history gave, he had what we call angina pectoris, that these symptoms would come and go but it wasn't until October 21st that he had his severe attack of pain which continued, which nitroglycerin didn't relieve.

"Q. And, Doctor, isn't it also true that many people have angina pectoris for many years and never suffer a thrombosis or infarct? A. That's correct.

"Q. To clarify it, on October 21st, in your opinion that is the time the changes actually occurred wherein an infarct or tissue death developed, is that true? A. That is my opinion."

In the face of the foregoing evidence, and other testimony which has not been here detailed because of limits of time and space, we

have little difficulty in concluding that, under the facts and circumstances of this case, the record discloses sufficient substantial competent evidence to sustain (1) the findings of the Director and the trial court that the deceased workman suffered accidental injury, that the accident arose out of and in the course of his employment, and that his death resulted from such accidental injury and (2) the awards made in accord with such findings. It follows the judgment and award of the district court must be affirmed.

In passing it should be stated we believe there is another sound reason for affirming the district court's judgment. The evidence of record warrants a conclusion the physical structure of the workman involved in this case gave way under the stress of the usual labor he was doing on October 21, 1959. In that situation, under well considered decisions, it has been established that our Workmen's Compensation Act prescribes no standard of health for a workman, and if his physical structure gives way under the stress of his usual labor his death is an accident which arises out of his employment. See, e. g., *Pinkston v. Rice Motor Co.,* 180 Kan. 295, 303 P. 2d 197; *Workman v. Johnson Bros. Construction Co.,* 164 Kan. 478, 479, 480, 190 P. 2d 863; *Carney v. Hellar,* 155 Kan. 674, 127 P. 2d 496; *Gilliland v. Cement Co.,* 104 Kan. 771, 180 Pac. 793. Moreover, under our decisions it is well-established that accidental injuries are compensable where the accident only serves to aggravate or accelerate an existing disease. (*Holler v. Dickey Clay Mfg. Co.,* 157 Kan. 355, 139 P. 2d 846; *Carney v. Hellar,* 677, *supra; Williams v. Cities Service Gas Co.,* Syl. ¶ 5, *supra;* Hatcher's Kansas Digest [Rev. Ed.], Workmen's Compensation, § 16; West's Kansas Digest, Workmen's Compensation, § 556.)

It appears from the record presented that two more questions raised by the parties, one by the appellants and one by the appellees, are not here subject to appellate review. For that reason they require no further attention.

The judgment is affirmed.